## LORD, in Error, *v.* THE STATE.

Keeping a common gaming-house was an offence at common law, and is such, by reason of the adoption of that law, in this State.

An indictment for that offence is supported by evidence that the defendant kept a house in which cards or dominos were habitually played for meats and drinks.

It is unnecessary to show in proof of such an indictment, that the persons frequenting the house were of the character therein charged ; that cursing, swearing, drinking, or other like vices, were actually committed there, or that the games played were of the exact description alleged in the indictment; such matters of description not being material.

The jury are bound in criminal cases to render a verdict according to the law as charged by the court.

A written verdict in a criminal case is irregular and unofficial ; and may be rejected accordingly and a verdict taken orally in the usual form.

INDICTMENT, alleging that the respondent being a person of idle and dissolute habits of life, on the first day of July in the year of our Lord one thousand eight hundred and forty-one, and on divers other days and times between that day and the day of the finding this bill, at Dover in the county aforesaid, a *certain common ill-governed and disorderly gaming-house, unlawfully did keep and maintain ;* and in the said house for his own lucre and gain, certain evil disposed persons of evil name, fame and conversation to come together on the days and times aforesaid, there unlawfully and willingly did cause and procure ; and the said persons in the said house at unlawful times, as well in the night as the day, on the days and times aforesaid, there to be and remain drinking, tippling, cursing, swearing, quarrelling, and gaming, with cards and dominos for money, and otherwise misbehaving themselves; unlawfully did permit and suffer said house as a gaming-house, then and there did keep ; to the great injury and common nuisance of all peaceable citizens of said State there residing, inhabiting, and passing, and against the peace, &c.

The court instructed the jury, that keeping a common gaming-house was an offence against the law of the State, and that the indictment charged against the respondent an offence of that description; and that to sustain the charge, they must be satisfied beyond reasonable doubt that the respondent was guilty of such offence; that the indictment pursued the usual form adopted in cases of this description; and that matters were alleged in it that constituted the usual attendant circumstances of the offence, but which were not essential to be shown in proof in order to sustain the indictment. That it was not necessary to prove that the persons frequenting said house were "evil disposed persons of evil name, fame, and conversation," farther than might be inferred from the general charge, if found guilty; and that the defendant might be found guilty though there was no specific proof of the acts of cursing, swearing, quarrelling, and drinking, alleged in the indictment. The court further instructed the jury, that they were bound by their oaths well and truly to try the prisoner at the bar, according to law and the evidence given them; and that it was their duty in determining as to the law of the case, to govern themselves by the best evidence in relation to it which the nature of the case admitted of. That the court was the constituted organ to declare the law to them, and their instructions for the time being was the best evidence which the nature of the case admitted of, of the law applicable to such case; and that the jury were bound so to regard it, and in so doing would discharge the obligation designed to be imposed upon them by their oaths; and that if they disregarded such instructions, it was at their own peril. After the jury had retired they sent into the court the following request for further instructions. "We wish to know if merely playing cards or dominos for something to eat and drink in a man's shop or store, constitutes his keeping a gaming-house, within the meaning of the law

Lord v. The State.

in the court's opinion." To which the court replied, "The court are of opinion that keeping a house where cards or dominos are habitually played for the purposes above named, would constitute the offence of keeping a common gaming-house." It was agreed that the jury might draw up their verdict in writing and bring it into court in the morning. In the morning the jury passed to the clerk the papers in the case, and among them the following: "The jury find that the respondent is guilty of keeping a gaming-house," which was signed by the foreman. The clerk called upon the foreman in the usual manner to know whether they found the prisoner at the bar guilty or not guilty, and the foreman declared that they found him guilty; which verdict was entered of record. The respondent moved in arrest of judgment, on the ground that no offence was charged in the indictment, and that the jury had not returned a verdict on the whole matter submitted to them. He also moved for a new trial on account of misdirection of the court in matters aforesaid.

*Hale & Wiggin*, for the prisoner.

1. It is well settled that playing at cards and dice and the like are not prohibited by the common law, and are not *mala in se*, of their own nature; 2 Burns' Justice 299 ; Dalton's Cases 46 ; and they are not prohibited by the statute of this State. (This indictment was found in May, 1842.) Russell in his work on Crimes also says, that playing at cards, &c., for recreation and for *moderate sums*, is not any offence. 1 Russell 406. 2. Playing at cards, &c., it seems therefore is no crime or offence, and allowing persons to play at cards and dice, &c., in one's house is no offence, unless there are attendant circumstances which disturb the neighborhood. Admitting then the charge in the indictment is well laid, the State is bound to prove *more* than that persons played at cards or dice in the re-

spondent's house, for *that* is no crime. They must prove
that the house is so managed and conducted as to disturb
the neighborhood and make it a public nuisance.    3. And
more, the State must prove that persons visiting the house
gamed with " cards and dominos " for *money*, else there was
no gaming, at least *unlawful gaming.  Sigil* v. *Jebb*, 3 Stark-
ie's N. P. C. 1 ; Roscoe's Crim. Ev. 509, 510.  The prosecu-
tor must prove the playing with cards, dice, and bearing a
part in the stakes, or betting on the sides, or winning and
obtaining, &c., sums of money.    4. If the playing at cards is
no offence, and allowing cards to be played in one's house
of itself is no offence or crime, the allegations in the in-
dictment that the respondent kept a disorderly ill-governed
house, where there was " *cursing, swearing, quarrelling, tip-
pling,* and *drinking,* are matters of substance and must be
proved.  They constitute the gist of the offence as alleged.
The judge presiding at the trial ruled that they were
formal allegations, and it was not essential to prove them,
*and they were not proved.*    5. If the character of the per-
sons alleged in the indictment as frequenting the house,
and the "cursing," &c., &c., &c., are immaterial and formal,
and it is not necessary that they played for money, there
is nothing left but the simple fact that the respondent
allowed persons to *play at cards,* &c., in his house.  This
every citizen in this State has a right to do, unless there
are other attendant circumstances about it which make it
a nuisance or disturb his neighbors.    6. It is not of itself
wrong to allow persons who visit one's house to play at
cards.  Because they might play for recreation, or sport,
or for moderate sums, or not at all for money.  In either
case it would not be unlawful.  In *Sigil* v. *Jebb, Abbott,*
C. J., was of opinion that playing for any thing else but
money, does not constitute gaming within the meaning of
the law, and that it was playing *for money* that made all
games unlawful.  Playing at cards or dice merely for
something to eat or drink, is not unlawful.  The author-

ities quoted above sustain this position. 7. Therefore it is not unlawful to play cards, dice, dominos, &c., and if it is not an unlawful game to play cards for something to eat and drink, or for any thing except money, it can not it would seem be a crime for a person to permit in his house or tavern other persons to do what is lawful and right. The charge in the indictment is for keeping a *common disorderly, ill-governed, gaming-house*, without these words or those equivalent would the indictment be good?

In *Rogers* v. *Rogers*, 14 Wend. 131, the court held that keeping a billiard room without allowing noise to disturb the neighborhood, is not a public nuisance, and playing the *rub* to determine which party shall pay for the use of the table is not gaming. This case covers all the ground in the one before the court. The evidence only went to show that sometimes the respondent was in the habit of allowing persons to play cards for something to eat or drink, but not for *money*, nor even to pay money for the use of the room. We submit it to the court whether merely proving that persons habitually played cards at the respondent's house for something to eat and drink, and stopping there, sustains the indictment for keeping a disorderly gaming-house, and that it was a public nuisance.

*Gove*, Attorney-General, for the State.

GILCHRIST, J. The instructions to the jury to which the exceptions of the defendant relate, were in substance, 1. That keeping a common gaming-house is an offence against the laws of the State. 2. That keeping a house in which cards or dominos are habitually played for something to eat and drink in such house, amounts to the offence. 3. That it was unnecessary to prove that the persons frequenting the house are evil disposed persons, and otherwise of the character described in the indictment, or to prove specific acts of " cursing, swearing, quarrelling, and drinking," alleged. 4. That the jury

were bound to regard the instructions of the court as to the law, as proceeding from the source constituted to declare it, and as their best guide.

There are many authorities both ancient and modern which establish beyond controversy that keeping a common gaming-house was an indictable offence at common law. Roscoe's Crim. Ev. 743; *Rex* v. *Higginson*, 2 Burrows 1232; *Rex* v. *Dixon*, 10 Mod. 336; *The King* v. *Rogier* and *Humphrey*, 1 Barnw. & Cresw. 272. The point was fully considered upon argument in the last named case, and decided in conformity with the uniform current of authorities in the common law.

That the common law and the English Statutes in amendment of it, so far as they were applicable to our institutions and the circumstances of the country, were in force here upon the organization of the Provincial Government, and that they have been continued in force by the constitution, so far as they are not repugnant to that instrument, until altered or repealed by the legislature, was a point considered and decided in *The State* v. *Rollins*, 8 N. H. 550; and we see no ground for drawing in question the correctness of that decision. The necessary conclusion therefore is, that the instructions of the court upon the first point were right.

2. A common gaming-house is indictable as a nuisance, and is such, not because a particular description of punishable offences are commonly committed within its walls, but "because they are temptations to idleness and because they are apt to draw together great numbers of disorderly persons." Hawk. Pl. Cr., Book 1, ch. 75, sec. 6. These mischiefs are quite as likely to result from the kind of gaming described in the instructions of the court, as from gaming for money whether in large sums or small. Each form of the vice might afford peculiar attractions for its appropriate class of idlers, and give occasion for its appropriate train of social disorders. But each falls apparently

within the description of gaming, and tends directly to the evil consequences referred to. It is therefore wholly immaterial that the defendant adduces authorities to show that a single act of playing with cards or dominos for meat or drink is not an offence at law. We think that the jury were properly instructed that the offence was proved, by evidence showing that cards and dominos were habitually played in the house for the purposes described.

3. The offence described in the indictment is that of keeping a common gaming-house, and it has frequently been said by good authorities, that it is sufficient if the indictment allege that generally, and no more, (*Holroyd*, J., in *The King* v. *Rogier & a.*, 1 Barnw. & Cresw. 273; Roscoe's Crim. Ev. 743) although it is usual to charge the defendant with procuring persons of evil fame and disposition to assemble there, and to practice the various vices that are apt to be indulged in at such resorts. But no case is found in which these matters of description have been held to be material. Indeed the question has been, whether the government should be permitted in proof of a general charge of keeping a common gaming-house, or the like, to give in evidence particular acts. *Clark* v. *Periam*, 2 Atk. 339; *J. Anson* v. *Stewart*, 1 T. R. 752–4; Roscoe's Crim. Ev. 744.

Those authorities clearly show that it is unnecessary to prove what persons in particular resort to the places complained of; of course any evidence that they were "evil disposed persons, of evil name, fame, and conversation," if necessary at all, must sometimes be loose and unsatisfactory.

Were the law as is contended by the defendant, prosecutions for keeping a common gaming-house, a common house of prostitution, or an inn accustomed to harbor thieves and the like, would necessarily resolve themselves into collateral inquiries of a scandalous nature, affecting parties strangers to the record, and into imputations of crimes to those who have no means of defending themselves.

Lord v. The State.

We are therefore of the opinion that all such matters as the characters and purposes of the visitors to the house, and the particular kinds or modes of gaming pursued there, as well as the existence of the vices of swearing, tippling, and their kindred evils, ordinarily attendant upon the practices which stamp the house with its indictable character, are merely descriptive and immaterial to the essence of the offence charged. It was unnecessary to set them up in the indictment, and equally unnecessary to prove them.

4. The jury were also charged to take the instructions of the court as to the law of the case, as their legitimate and safest guide in the discharge of their duty of rendering a verdict according to law. This the defendant says was erroneous for the reason that the jury are themselves judges of the law in criminal cases. If that be so, there was little harm in the instruction; nor can the supposed error afford obvious ground for the exception. But the law has been held otherwise in this State, upon due consideration, and the ruling of the court was in conformity with it. *Pierce* v. *The State*, 13 N. H. 536.

We are therefore of the opinion that the instructions of the court to which the exceptions relate afford no cause for setting aside the verdict.

It is said on motion in arrest of judgment, that the verdict of the jury did not cover the whole matter submitted. The custom in criminal cases is for the jury to render their verdict of guilty or not guilty orally in open court, and a record to be made of it. That course was pursued in this case. The written verdict which the foreman undertook to make, was irregular and was correctly rejected by the court. The verdict of guilty related to the offence charged in the bill.

We are therefore of opinion that the motion must be denied and that there must be

*Judgment on the verdict.*